UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | |
| ) | Bankruptcy No. 05-30667-JAD |
| GILBERT BALKO and ) | |
| ANNE BALKO, ) | Chapter 13 |
| ) | |
| Debtors. ) | |
| ────────────────────────── X | |
| ) | |
| GILBERT BALKO and ) | Adversary No. 06-02001-JAD |
| ANNE BALKO, ) | |
| ) | Doc. No. 163 |
| Plaintiffs, ) | |
| ) | |
| - v - ) | |
| ) | |
| CARNEGIE FINANCIAL GROUP ) | |
| INC., PARAGON HOME ) | |
| LENDING, CHET UNDERHILL, ) | |
| ALLEGHENY APPRAISALS, ) | |
| J.P. MORGAN CHASE BANK, ) | |
| N.A., AS TRUSTEE, ) | |
| JOSEPH BEHRENS, JESSE ) | |
| CONNER, DONNA CARTER, ) | |
| PHILLIP SCHEIDEL and HERITAGE ) | |
| SECURITY SERVICES, ) | |
| ) | |
| Defendants. ) | |
| ────────────────────────── X | |

**MEMORANDUM OPINION**

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. The matter before the Court is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (L) and (O). The

00001865.WPD

matter before the Court is the Motion to Dismiss filed by additional defendant Jesse Connor ("Connor").[1] The allegations against Connor include fraud, civil conspiracy and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. The Motion to Dismiss asserts that the fraud and civil conspiracy counts against Connor should be dismissed on the grounds of statute of limitations and the counts regarding the Pennsylvania Unfair Trade Practices and Consumer Protection Law should be dismissed for failure to state a claim upon which relief can be granted. For the reasons expressed below, the Motion to Dismiss shall be denied.

## I.

In January 2001, Plaintiffs/Debtors Gilbert and Anne Balko ("Balkos") refinanced their residence through Defendant Carnegie Financial. (Dkt. #130 Third Amended Complaint ("Complaint), ¶44.) Connor is the president of Defendant Carnegie Financial. Id. at ¶16. At the time of the 2001 refinancing, the Balkos believed their home to have been appraised at approximately $150,000.00. (Id. at ¶58.) In March 2003, the Balkos again refinanced their home. The Balkos were apparently having difficulty paying their credit card debt and Mr. Balko was now earning a lower income due to job loss.

The Balkos contend that they were advised by then Carnegie Financial

---

[1] Connor was identified in the Third Amended Complaint as Jesse Conner.

employee Defendant Joseph Behrens ("Behrens") that in order to improve their credit score and improve their debt to income ratio, they would need a "band-aid loan" which was a fixed rate loan with a two year term at a lower interest rate than their current loan. (Id. at ¶¶68-70). The "band-aid loan" would then be able to be refinanced after two years at a lower interest rate if timely payments were made. (Id. at ¶72.) The 2003 refinancing was to result in the payoff of certain of the Balkos' mortgages and credit card balances.

An appraisal for the refinancing was obtained by Carnegie Financial through Defendant Chet Underhill. Balkos contend that the appraisal was intentionally falsified and was fraudulent. (Id. at ¶¶89-90.) At the time of the 2003 refinancing, Mr. Balko apparently believed that his home had a value of no more than $160,000. (Id. at ¶74.) Pursuant to the refinancing, the Balkos, borrowed the sum of $240,000.00.

In 2005, the Balkos again attempted to refinance through Carnegie Financial. Their attempt was unsuccessful since the loans existing against the home were in excess of its value. (Id. at ¶100.) Thereafter, the Balkos filed their voluntary Chapter 13 petition on August 18, 2005.[2]

**II.**

---

[2] Among the Balkos' debts listed in the Schedules was approximately $58,000.00 of credit card debt apparently incurred since the refinancing in 2003. (Case No. 05-30667JAD, Dkt. #1, Sch. F.)

The Balkos assert four separate counts against Connor either individually or as part of a group of defendants. Count 2 alleges Fraud/Civil Conspiracy concerning the 2003 refinancing. According to the Complaint, Connor along with Defendants Paragon Home Lending, Anthony Bucci, Joseph Behrens, Carter Underhill and Allegheny Appraisals allegedly conspired to defraud the Balkos by an alleged variety of acts which need not be enumerated for purposes of this determination. Count 2 also alleges that Connor along with the other specified defendants committed fraud by breaching their alleged fiduciary duty to the Balkos and failing to obtain credit for them on the most advantageous terms.

Count 3 asserts fraud and civil conspiracy against Connor individually. In the fraud counts, Balkos do not allege that Connor personally made any misrepresentations. Rather, it is contended that Connor participated in or encouraged fraud by the manner in which Carnegie Financial was operated.[3]

Count 6 asserts a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") against Connor and certain other defendants on the grounds that the Balkos were induced into the loan by misrepresentations that the proposed loan had characteristics that it did not and

---

[3] More specifically, it is alleged that Connor participated or encouraged fraud by: allowing fee splitting between brokers and/or subprime lenders; requiring brokers to meet a sales quota; paying bonuses for achieving certain levels of business with subprime lenders; receiving a portion of every loan fee; failing to use reasonable administrative controls over brokers; encouraging violations of RESPA, TILA and HOEPA; encouraging the arrangement of loans resulting in receipt of unscheduled rebates, bonuses; failing to ensure the licensure and identity of independent contractors and appraisers. (Id. at ¶140.)

that the Balkos' creditworthiness had characteristics that it did not. (Id. at ¶¶153-158). Further, the Balkos allege that such acts constituted deceptive conduct within what is referred to as the catchall provision of the Act. The final count, Count 8, is against Connor individually and also asserts a violation of the UTPCPL under the catchall provision.

### III.

Fed. R. Civ. P. 12 ("Rule 12") is incorporated into the Federal Rules of Bankruptcy Procedure by operation of Fed. R. Bankr. P. 7012. In evaluating a motion to dismiss pursuant to Rule 12(b)(6) and Fed. R. Bankr. P. 7012(b)(6), the court must assume the facts alleged in the Complaint to be true and draw all factual inferences in favor of the nonmoving party. In re Loranger Mfg. Corp., 324 B.R. 575, 577-78 (Bankr. W.D. Pa. 2005) citing Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991). In order for a motion to dismiss to be successful, it must be clear that no relief could be granted to the plaintiff under any set of facts that could be proved consistent with the allegations in the complaint. Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004) citing Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In ruling on a motion to dismiss based upon statute of limitations grounds, the Court must look only at the allegations contained in the complaint. Bradley v. Conner, C.A. 07-1347, 2007 WL 4241846 (W.D. Pa. Nov. 29, 2007).

**IV.**

Connor's Motion to Dismiss asserts that the counts for fraud/civil conspiracy fail to state a claim upon which relief can be granted because they are barred by the applicable statute of limitations. The civil conspiracy alleged has as its basis the asserted fraud. Therefore, the applicable statute of limitations is that of fraud. The statute of limitations for fraud in Pennsylvania is two years pursuant to 42 Pa. C.S.A. §5524(7).

The present adversary was commenced on January 3, 2006. Connor was added as an additional defendant in the Third Amended Complaint which was filed on or about July 12, 2007. The Balkos' most recent refinancing occurred March 24, 2003. (Dkt. #130, ¶95.) Therefore, Connor argues, the Balkos would have had to commence an action no later than March 24, 2005.

The Balkos counter that the statute of limitations has been equitably tolled and/or the discovery rule is applicable to extend the time in which to commence their adversary.[4]

---

[4] The Court is mindful of the distinction between the two doctrines as cautioned by the U.S. Court of Appeals for the Third Circuit in Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1390 (3d Cir. 1994):

> Underlying this difference between the discovery rule and equitable tolling is the more fundamental difference in purpose between the two rules. The purpose of the discovery rule is to determine the accrual date of a claim, for ultimate purposes of determining, as a legal matter, when the statute of limitations begins to run. Equitable tolling...presumes claim accrual. Equitable tolling steps in to toll, or stop, the running of the statute of limitations in light of established equitable considerations.

The discovery rule provides that "where the existence of the injury is not known to the complaining party and such knowledge cannot be reasonably ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible." Bradley, 2007 WL 4241846 at *4 (quoting Smith v. IMG Worldwide, Inc., 437 F.Supp. 2d 297 (E.D. Pa. 2006)).

The Balkos contend that they did not learn of the alleged fraud/civil conspiracy until they attempted to refinance their loan approximately two years after the March 2003 loan. (Dkt. #130, ¶ 98-105.) In May 2005, Carnegie Financial advised them that it was not able to provide them refinancing. (Id. at ¶100). At that point, Defendant Behrens, who allegedly made the promise to refinance in two years, was apparently no longer employed by Carnegie Financial. (Id. at ¶102.) The Balkos were then referred to and contacted Behrens at his current employer in May 2005. (Id.) Behrens purportedly promised to assist the Balkos but did not communicate with them further. (Id. at ¶105).

Connor asserts that the Balkos would have known of any alleged fraud at the time of the refinancing in 2003 based upon the fraudulent appraisal of the Balkos' home. However, the Balkos assert that, in part, they were induced into accepting the 2003 refinancing by the promise of a future refinancing in two years at a lower rate upon timely payments made. (Id. at ¶¶72, 117.C.) Whether this promise to refinance, which the Court must accept as true for purposes of this

motion, along with the circumstances surrounding the 2003 refinancing were sufficient to result in the Balkos' failure to ascertain their injury until 2005 is not readily apparent from the complaint. Whether or not the Balkos knew of or could have reasonably ascertained their injury within the prescribed statutory period is a question of fact. The determination of whether the discovery of the alleged fraud by the Balkos was reasonably possible depends on facts not presently known to the Court or contained in the Complaint. If the facts as alleged by the Balkos are proven, the discovery rule may be applicable. Accordingly, the potential applicability of the discovery rule prevents the dismissal of this complaint based upon statute of limitations grounds at this stage of the proceeding.

Equitable tolling allows, in pertinent part, a cause of action filed beyond the statute of limitations to proceed where the plaintiff has been actively misled by the defendant regarding a cause of action. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994). The basic principle underlying the equitable tolling doctrine is that a party should not be permitted to profit from its own wrongdoing. ("To allow a defendant to benefit from the statute of limitations defense after intentionally misleading the plaintiff with regard to the cause of action, thereby causing the plaintiff's tardiness would be 'manifestly unjust'".) Id. at 1388.

Balkos contend that they were misled by Defendant Behrens into believing that they would be able to refinance the loan in two years (Dkt. #130, ¶¶68 - 73),

that they were not provided with copies of underlying loan documents (Id. at ¶¶78-80), and that the appraisal upon which the loan was based was fraudulent. (Id. at ¶90). Further, that the conduct of Carnegie Financial was encouraged and/or condoned by Connor as president of Carnegie Financial. (Id. at ¶¶140-143). Such allegations are sufficient to withstand a motion to dismiss and support an equitable tolling argument. The Court does not decide whether Balkos' equitable tolling argument is adequate or meritorious at this stage. It merely determines that Balkos' contentions of being misled are sufficiently pled and raise factual questions such that a dismissal of the action based on statute of limitations grounds is not appropriate at present.

The facts and posture of this case are similar to those in Wise v. Mortgage Lenders Network USA, Inc., 420 F. Supp. 2d 389 (E.D. Pa. 2006), in which mortgagors brought suit against their lender and mortgage broker for alleged violations of various lending disclosure statutes as well as common law fraud. Plaintiffs alleged that they employed defendant mortgage broker to obtain a 30 year fixed mortgage to complete home repairs. Instead of the promised loan, plaintiffs were put into a variable rate loan which resulted in higher monthly payments than their previous loan. Plaintiffs contended that when they refused to initially sign some of the loan documents they were promised that they could refinance the mortgage after two years and so they eventually agreed to the terms. The plaintiffs alleged that they did not realize that they had been defrauded until

the lender refused to refinance two years after the initial loan.

The defendants each sought dismissal on the basis that the claims were time barred. Plaintiffs asserted that the statute of limitations regarding the alleged statutory violations was equitably tolled. The court agreed with the plaintiffs finding that the alleged facts suggested an attempt by the defendants to defraud the plaintiffs through exploitation of their financial situations as well as by concealing material terms of the loan. Id. at 394. Further, in the Wise case, facts had been sufficiently pled which, if true, would show that plaintiffs had exercised reasonable diligence in the investigation and commencement of the claims. Id. Specifically similar to this case is the allegation that the fraud involved, in part, a promise to refinance plaintiffs' loan in two years. Arguably the Balkos, like the Wise plaintiffs, were not put on notice until two years after the 2003 refinancing when defendants did not maintain their promise. Id.

The Wise plaintiffs also asserted the discovery rule as it related to their common law fraud claims. Again, the court found that sufficient facts were alleged which, if true, would show that they did not and could not have discovered the fraud until the refusal to refinance two years after the initial loan closing. Id. at 395. If plaintiffs were able to prove the alleged facts, the court found that their state law claims would have been brought within the statute of limitations. Id. at 396. The defendants' motions to dismiss were denied in the Wise case; and the Court also cited to the cases of Ballard v. National City Mortgage Co., C.A. 04-

3715, 2005 WL 147075 (E.D. Pa. Jan. 21, 2005) in which the court stated that "[w]hether equitable tolling applies cannot be decided on the pleadings."(citation omitted) and Foster v. EquiCredit, C.A. 99-6393, 2001 WL 177188 (E.D. Pa. Jan. 26, 2001)(summary judgment denied where material dispute existed regarding fraudulent concealment; otherwise, wayward defendants would be rewarded for evading the purposes of the law).

For these reasons, the Court finds that the Balkos' allegations and the assertions of the discovery rule and equitable tolling are sufficient to withstand the Motion to Dismiss. Accordingly, as to the statute of limitations argument, the Court will deny the Motion to Dismiss.

**V.**

In Counts 6 and 8, the Balkos allege violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-1 *et. seq.* The general purpose of the act is to protect the public from fraud and unfair or deceptive business practices. See e.g., In re Derienzo, 254 B.R. 334 (Bankr. M.D. Pa. 2000); Burke v. Yingling, 666 A.2d 288 (Pa. Super. 1995). 73 P.S. §201-3 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) ...are declared unlawful." In Count 6, violations of subclauses (4)(v) and (4)(xxi) are alleged against Connor and other defendants.

Subclause (4)(v) provides that it is an unfair trade practice to represent that a good or service has certain benefits or qualities that it does not possess. 73 P.S. §201-2(4)(v). The motion to dismiss, however, concentrates primarily on the allegations concerning the catchall provision found at subclause (xxi). Therefore, the Court will not devote particular attention to dismissal based on the subclause of §201-2(4)(v).

In Count 8, the Balkos allege violations of the UTPCPL against Connor under the portion of the statute known as the catchall provision. The catchall provision provides in relevant part: "'Unfair methods of competition' and 'unfair or deceptive acts or practices' mean...engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. §201-2(4)(xxi).

Connor contends that in order to plead a violation of the catchall provision, the elements of common law fraud must be pled with particularity including the common law elements of misrepresentation, reliance and causation. Toy v. Metropolitan Life, 928 A. 2d 186 (Pa. 2007); Weinberg v. Sun Co., Inc., 777 A.2d 442 (Pa. 2001); Booze v. Allstate Ins. Co., 750 A.2d 877 (Pa. Super. 2000). Connor argues that the Balkos failed to plead the elements of common law fraud with particularity, and accordingly, Connor requests that the UTPCPL claim should be dismissed.

The UTPCPL was amended in 1996 to include the language regarding

"deceptive" conduct found in the catch - all provision at subclause (xxi). Since the amendment, there has been inconsistency among the state court decisions whether the inclusion of the term "deceptive conduct" still necessitates pleading fraud with particularity or if a lower standard for pleading deceptive conduct is all that is required. See e.g., Com. ex rel. Corbett v. Manson, 903 A.2d 69 (Pa. Commw. 2006)(holding that a plaintiff need not establish the elements of common law fraud to prove a 201-2(4)(xxi) claim but rather the question is one of whether the company or corporate officer engaged in conduct that might be "deceptive to the ordinary consumer"); contra Colaizzi v. Beck, 895 A.2d 36 (Pa. Super. 2006)(plaintiff must prove all elements of common law fraud to establish a 201-2(4)(xxi) violation).

The Pennsylvania federal courts that have addressed the issue have not required proof of each element of common law fraud. Rather they have followed the holding of the Pennsylvania Commonwealth Court in Manson, supra. See e.g., Mertz v. Donzi Marine, No. 04-55, 2007 WL 710263 (W.D. Pa. March 6, 2007); Alberton v. Commonwealth Land Title Ins. Co., C.A. No. 06-3755, 2008 WL 269490 (E.D. Pa. Jan. 31, 2008); In re Patterson, 263 B.R. 82 (Bankr. E.D. Pa. 2001); Flores v. Shapiro & Kreisman, 246 F.Supp. 427 (E.D. Pa. 2002).

This Court will follow the other federal courts that have found that the catchall provision of the UTPCPL does not require proving each of the elements of common law fraud. See Mertz, 2007 WL 710263 at *11; Patterson 263 B.R. at 92-

93.  This conclusion appears to be in keeping with the policy of liberally interpreting the consumer protection laws in order to thwart fraud.  See e.g., Com. ex rel. Creamer v. Monumental Properties, Inc., 329 A.2d 812, 817  (Pa. 1974)("Since the Consumer Protection Law was in relevant part designed to thwart fraud in the statutory sense, it is to be construed liberally to effect its object of preventing unfair or deceptive practices.")[5]

Therefore, the motion to dismiss will not be granted on the basis that a violation of the UTPCPL was not properly pled.  The Balkos have pled sufficient allegations to sustain, if proven, an action for violation of Unfair Trade Practices and Consumer Protection Law under the catchall provision against Connor.

In their letter brief filed after the oral argument on the Motion to Dismiss, the Balkos focused on the Restatement of Agency to contend that liability extends to Connor personally because the mortgage brokers were agents of Carnegie Financial, were acting within the scope of their employment and under the policies and procedures of Carnegie Financial.  See e.g., Rest. 2d Agency §§ 219, 257. Agency theory provides for the liability of a principal where agents have acted

---

[5] It is noted that the Pennsylvania Supreme Court recently held that justifiable reliance is required to be proven in a private cause of action under the UTPCPL.  Toy v. Metropolitan Life Insurance Company, 928 A. 2d 186 (Pa. 2007).  However, the decision was based on the statute as it existed prior to the 1996 amendments which added the "deceptive conduct" language.  Id. at 188, fn.1.  Even in Toy was applicable in this instance, the Balkos have sufficiently pled allegations regarding reliance on the representation of Carnegie Financial employees (Dkt. #130 at ¶136) which, according to Balkos, were following policies and practices condoned and encouraged by its president, Connor (Id. at ¶¶141-142). Whether reliance was justified is a question of fact and not subject to a motion to dismiss.

tortiously within the scope of their employment. The "principal" (in the context of the theory of agency) is the employer - not an officer or director of the employer as is presently alleged. All of the cases cited by Balkos in their letter brief involved an employer entity as the "principal". The employer entity, as "principal", was found liable for tortious acts of its employees where the acts were within the scope of the agent's employment. Accordingly, the law of agency may be relevant for determining liability against the "principal" employer entity in this instance, Defendant Carnegie Financial, but not against the president of the employer, Connor. The Balkos have not cited any authority that would extend personal liability based on the law of agency to a specific individual officer, director or shareholder in the manner contended by the Balkos.

It appears that the alleged liability of Connor may derive from his participation in the alleged tortious conduct of other defendants. This derivative liability (although not specifically stated as such by the Balkos) is known as the "participation theory". The "participation theory" is well established in Pennsylvania law. Wicks v. Milzoco Builders, Inc., 470 A.2d 86 (Pa. 1983). Under this theory, a corporate officer can be held liable for participating in a corporation's wrongful acts based on the officer's actions rather than ownership. In re Eastern Continuous Forms, 302 B.R. 320 (Bankr. E.D. Pa. 2003). Liability is imposed only where the corporate officer participated in the wrongful acts. Wicks, 470 A.2d at 90.

It is alleged that Connor, as President and employee of Carnegie Financial, was purportedly part of an alleged scheme to defraud the Balkos. Among the ways in which Connor is alleged to have participated are by encouraging fraudulent behavior by requiring the mortgage brokers to obtain a quota, in receiving a portion of each loan fee received by a Carnegie Financial mortgage broker, in encouraging brokers to arrange loans in such a way that Carnegie Financial received higher fees, bonuses or other proceeds to the detriment of the loan customers. Id. at ¶¶140 - 143. Whether these alleged acts, if proven, would be sufficient to impose liability pursuant to the participation theory is not now determined.

In order to find Connor liable for any fraudulent or deceptive conduct of Carnegie Financial, Balkos would first have to show that such conduct was engaged in by the other defendants. If so, then derivative liability could be imposed if it can be shown, upon proper proof, that Connor participated in such conduct. See e.g., Wicks, supra; Loeffler v. McShane, 539 A.2d 876 (Pa. Super. 1988); Village at Camelback Property Owners Ass'n v. Carr, 538 A. 2d 528 (Pa. Super. 1988).

Prior to making any determination regarding the potential imposition of liability based upon the participation theory, however, the Court would provide the parties with the opportunity to brief any relevant issues concerning the participation theory.

## VI.

For the reasons expressed above, the Court finds that the Balkos have pled sufficient allegations against Connor to withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted based on fraud and/or violation of the Unfair Trade Practices and Consumer Protection Law. Accordingly, the Motion to Dismiss filed by Defendant Jesse Connor shall be denied. An appropriate order shall be entered.

Dated this **26th** day
**February, 2008**             /s/   Jeffery A. Deller
                               Jeffery A. Deller
                               U.S. Bankruptcy Judge


case administrator to serve:

    Gilbert and Anne Balko
    All counsel of record

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | |
| ) | Bankruptcy No. 05-30667-JAD |
| GILBERT BALKO and ) | |
| ANNE BALKO, ) | Chapter 13 |
| ) | |
| Debtors. ) | |
| _____ X | |
| ) | |
| GILBERT BALKO and ) | Adversary No. 06-02001-JAD |
| ANNE BALKO, ) | |
| ) | Doc. No. 163 |
| Plaintiffs, ) | |
| ) | |
| - v - ) | |
| ) | |
| CARNEGIE FINANCIAL GROUP ) | |
| INC., PARAGON HOME ) | |
| LENDING, CHET UNDERHILL, ) | |
| ALLEGHENY APPRAISALS, ) | |
| J.P. MORGAN CHASE BANK, ) | |
| N.A., AS TRUSTEE, ) | |
| JOSEPH BEHRENS, JESSE ) | |
| CONNER, DONNA CARTER, ) | |
| PHILLIP SCHEIDEL and HERITAGE ) | |
| SECURITY SERVICES, ) | |
| ) | |
| Defendants. ) | |
| _____ X | |

## ORDER OF COURT

**AND NOW** this **26th** day of **February, 2008**, for the reasons expressed in the

Memorandum Opinion issued this date, the Court hereby **ORDERS, ADJUDGES**

and **DECREES** that the Motion to Dismiss filed on behalf for Defendant Jesse

00001865.WPD

Connor is **DENIED**.

It Is Further **ORDERED** that Defendant Jesse Connor shall file an answer to the Third Amended Complaint at Docket #130 on or before **March 17, 2008**.

February 26, 2008                    /s/ Jeffery A. Deller
                                     Jeffery A. Deller
                                     U.S. Bankruptcy Judge

case administrator to serve:

    Gilbert and Anne Balko
    All counsel of record